UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA SUZANNE HARNDEN,

        Plaintiff,

v.

SAINT CLAIR COUNTY 31ST
CIRCUIT COURT, PROBATE;
JUDGE ELWOOD BROWN,
JUDGE JOHN D. TOMLINSON,
ATTORNEY REFEREE PETER
SHANE BURLEIGH, and CLERK
CHRISTINE REGAN,

        Defendants.

_____/

Case No. 2:16-cv-13905
District Judge Mark. A. Goldsmith
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (DE 11)

**I.     RECOMMENDATION**:  The Court should grant Defendants Saint Clair

County Circuit Court, Judge Elwood Brown, Judge John D. Tomlinson, (Attorney)

Referee Peter Shane Burleigh, and (Clerk) Christine Regan's (collectively, the

"Court Defendants") motion to dismiss.

II.    **REPORT**

   **A.  Background – Prior Lawsuits**

   This is one of four lawsuits filed in this Court *in pro* per by Plaintiff Pamela

Harnden in the past two years, stemming from actions taken by state and local

government officials, resulting in the questioning and/or temporary removal of

Plaintiff's natural, adoptive and foster children.  Plaintiff alleges that she and her

husband ultimately prevailed at the conclusion of various state court proceedings

which sought to remove the children from their care and custody.  More

specifically, and pertinent to this motion, she alleges that March 15, 2010 is the

date on which the government's second case against them was closed.  (DE 1 at 2.)

   Plaintiff's first lawsuit concerning these events, filed by Plaintiff and her

husband for themselves and "on behalf of their then minor children" on August 5,

2015, was brought against the children's school district, various officials therein,

and the local police department.  Judge Goldsmith adopted my report and

recommendation, overruled Plaintiff's objections thereto, and dismissed that

lawsuit on May 16, 2016, finding that there is no private right of action for

kidnapping and that all of Plaintiff's claims were barred by the applicable statutes

of limitation.  (Case No. 15-12738, DE 29.)  Undeterred by this Court's

pronouncements in that case, Plaintiff filed three more lawsuits, including the

instant one, slightly less than six months later, on November 3, 2016, asserting the

2

same claims against new parties.[1]  The new defendants in all three cases likewise moved for dismissal on various grounds, including sovereign immunity, qualified immunity, and because the claims are time-barred.  On July 17, 2017, Judge Goldsmith largely adopted my report and recommendation in Plaintiff's lawsuit against the Michigan Department of Human & Health Services defendants, over Plaintiff's objections (Case No. 16-13906), and dismissed that lawsuit because: (1) the claims against the Michigan Department of Human and Health Services, and the state government employees in their official capacities, are barred by sovereign immunity; and, (2) all other claims are barred by the applicable statutes of limitations, *were not tolled by the criminal investigation initiated by Plaintiff*, and the kidnapping claim—for which there is no private cause of action—does not excuse this case from the applicable limitations statutes.  (Case No. 16-13906, DEs 18 and 21.)[2]

---

[1] At the recent oral argument on this motion, Plaintiff stated that she filed these new lawsuits after she had an opportunity to conduct more research and found better case law on which to rely.

[2] Judge Goldsmith did not adopt my suggestion that the Court should consider enjoining Plaintiff from filing future lawsuits without prior court approval. For the sake of completeness, my R&R also reported that Plaintiff's case is not barred by the *Rooker-Feldman* doctrine.  (Case No. 16-13906, DE 18 at 17-19.)

**B.    Background – The Instant Lawsuit**

The underlying facts in this matter have been extensively laid out and discussed in the Court's prior orders in the two matters which have previously been decided in Case Nos. 15-12738 and 16-13906.  Accordingly, I will only address here those facts necessary to decide the instant motion to dismiss.

In the present lawsuit filed against the Court Defendants, Plaintiff asserts— as she has in her other lawsuits—claims of "Kidnapping, Gross Negligence, Civil Rights Violations, [and] Civil Conspiracy."  (DE 1 at 1.)  Plaintiff alleges "abuse of our family by [the] Michigan Department of Human Services, Saint Clair County Prosecutor's Office and Saint Clair County 31st Circuit Court" arising out of an "abuse/neglect case" that was opened October 22, 2008 and a concurrent second case opened January 12, 2010.  (*Id.* at 2.)  Plaintiff alleges that the Court Defendants "willingly participated in a conspiracy with the Michigan Department of Human Services (DHS) and law enforcement agencies in an effort to obtain federal funds by the illegal seizure of children."  (*Id.* at 7.)  Specifically, Plaintiff alleges that on October 20, 2008—"the beginning of a 17 month nightmare"— Child Protective Services (CPS) initiated an investigation of the Harnden Family centered on a claim that Plaintiff's 15 year old son hit Plaintiff's adopted daughter with a metal rod.  (*Id.* at 9.)  Plaintiff's son was arrested by the Sheriff's Department for domestic violence/aggravated assault, CPS workers removed the

foster children from Plaintiff's home, and Plaintiff and her husband were investigated for possible child abuse/neglect. (*Id.* at 11-12.) Plaintiff alleges that the Court Defendants "collude[d] with DHS in the government sanctioned kidnapping of children" and subsequent abuse of her family during the course of the court proceedings. The charges against Plaintiff's son were dismissed on November 24, 2008, and the investigation into Plaintiff's family of suspected child abuse/neglect closed on March 15, 2010. (*Id.* at 2, 25, 66.) Accordingly, Plaintiff's claims against the Court Defendants relate to events that took place between October 20, 2008 and March 15, 2010—the duration of the "17 month nightmare." (See *Id.* at 9.) In addition, Plaintiff complains that Clerk Christine Regan unreasonably delayed completing the trial transcript following the close of the case, until October 17, 2011, which creates "the assumption of collusion." (*Id.* at 72.)

Plaintiff alleges that she and her husband "took [their] case to the Federal Bureau of Investigation … with the allegations of kidnapping, perjury and wrong-doing in the court." (DE 1 at 2.) The FBI is alleged to have opened the case on their behalf and made a referral to the Michigan State Police (MSP) to conduct an investigation. (*Id.*) Thereafter, an MSP trooper allegedly advised Plaintiff's family "to move out of the county for [their] personal safety[.]" (*Id.*) Plaintiff contacted the Michigan Attorney General's Office on February 25, 2010 and "was

advised to seek local remedies first and if unsuccessful" then to re-contact that office.  (*Id.* at 2-3.)  Plaintiff and her husband "attempted to file [their] criminal complaints in person" with the Michigan Attorney General's Office, which "took receipt" of them on October 31, 2011 and assigned them a case number (2011-0031278-A) on January 9, 2012; however, a division chief of that office denied pursuit of the case on March 1, 2012, due to the FBI's concurrent involvement. (*Id.* at 3.)  The Harndens again went to the FBI on March 6, 2012, because the local and state law enforcement agencies "refused to investigate ... and the FBI could take jurisdiction under the RICO act[.]"  (*Id.* at 3-4.)

According to Plaintiff, her attempts to have the harassment of her family and the violation of her civil rights prosecuted criminally came to an end on November 12, 2014, when FBI Agent Christenson called to inform them "that since the United States Attorney's Office continued to refuse the issuance of warrants for a full investigation and possible arrest, she was obligated to close our case with instruction to contact her if any future issues arise."  (DE 1 at 4.)  As discussed below, Plaintiff looks to this date—the conclusion of the FBI's involvement—as the date on which her claims accrued, or alternatively, as the date through which the pertinent statutes of limitation were tolled:

> Due to the gathering and attempted gathering of evidences [sic] for criminal charges we were unable to file our civil matters.  As the FBI discontinued the pursuit of criminal charges less than two years ago, **we are within all statute of limitations for all civil matters that**

6

**follow or will be discovered during the commission of this complaint**.

(*Id.* (emphasis in original).)

The legal claims against the Court Defendants include claims for: Kidnapping (18 U.S.C. § 1201) (false arrest); Gross Negligence; Civil Rights Violations under the 4th, 5th, 6th, 8th and 14th Amendments; and Civil Conspiracy.  (DE 1 at 7-8.)[3]  Plaintiff asks the Court to award her damages of $100,000,000.  (*Id.* at 77.)

## C.   The Instant Motion

The Court Defendants filed their motion to dismiss on March 20, 2017.  (DE 11.)  They assert that Plaintiff's claims are barred by the applicable statutes of limitations.  According to the Court Defendants, the dates of the alleged "wrongs" that Plaintiff complains of were between October 21, 2008 and February 26, 2010, except as to the allegations against Defendant Christine Regan, which were ended by October 17, 2011 at the latest.  The Court Defendants argue that because this lawsuit was filed more than 5 years after the last possible accrual of her claims

---

[3] The Court notes, as it did in its prior order in Case No. 16-13906 (DE 18), that Plaintiff's pleadings grossly violate the procedural requirement that they be "simple, concise and direct," Fed. R. Civ. P. 8(d), and go well beyond the "notice pleading" method which is applied in federal court.  However, as before, for purposes of this motion and taking into account Plaintiff's *pro se* status, I have chosen to largely overlook this defect and have done my best to "construe" her pleadings, including the legal claims she is asserting, "so as to do justice."  Fed. R. Civ. P. 8(e).

against Regan, and more than 6 ½ to 8 years after the last possible date of the accrual of her claims against the remaining Court Defendants, these claims are well beyond the applicable statutes of limitations.  Specifically, the Court Defendants argue that Plaintiff's constitutional claims are barred by the three year statute of limitations applicable to § 1983 claims, and her state law claims of gross negligence and civil conspiracy, and possibly false arrest, false imprisonment or malicious prosecution (the "kidnapping" claim) are barred by the applicable two-year statutes of limitations.  The Court Defendants further argue, as previously found by this Court, that Plaintiff's claims were not tolled during the pendency of the FBI investigation. In addition, the Court Defendants argue that Plaintiff's claims against Judges Tomlinson and Brown and Referee Burleigh are barred by judicial immunity and that she fails to state a claim against Defendants Regan and the 31st Circuit Court.

Plaintiff opposes the motion.  (DE 13.)  Plaintiff conceded at the hearing that March 15, 2010 is last date regarding her claims, and that any later mentioned events in her complaint are not alleged in this lawsuit as a claim. She argues, however, that the applicable statutes of limitations for her claims were tolled during the FBI investigation until it was closed on November 12, 2014, citing *Afro-Lecon, Inc. v. U.S.*, 820 F.2d 1198, 1202-03 (Fed. Cir. 1987) for the proposition that courts have the discretion to stay civil proceedings "when the interests of

justice seem to require such action."[4]  She further asserts that "the FBI substantiated that [her] children were kidnapped" and that there is no limitations period for civil proceedings involving a kidnapping.  Plaintiff also argues that Referee Burleigh and Judges Brown and Tomlinson acted "outside of their territorial and/or authoritative jurisdictions" and were not entitled to judicial immunity, and that Ms. Regan's actions were grossly negligent and she is not entitled to qualified immunity.  (DE 13 at 11 & 15.)  Finally, Plaintiff explained that she did not intend to include "Saint Clair County 31st Circuit Court" as a defendant, but only to provide the proper title of each of the individual defendants, which have been named in their official and individual capacities. (DE at 17-20.)  But, to the extent the actions of Judges Brown and Tomlinson "represent official policy," she asserts the 31st Circuit Court may be subject to liability under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  (*Id.*)

The County Defendants filed a reply brief in support of their motion to dismiss on May 4, 2017.  (DE 14.)  Defendants again argue that Plaintiff's claims are barred by the applicable statutes of limitations, and were not tolled during the pendency of a criminal investigation, consistent with this Court's previous findings in Plaintiff's other cases.  Defendants further argue that their judicial acts are

---

[4] At the hearing, Plaintiff also cited to *Peden v. United States*, 512 F.2d 1099, 1103 (Fed. Cir. 1975) for the proposition that "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way."

protected by judicial immunity and that they acted within their jurisdictional authority.

## C.     Standard

Defendants frame their motion as a motion to dismiss brought pursuant to Rule 12(b)(6).  However, they filed answers to Plaintiff's complaint on December 8, 2016 and January 19, 2017, but filed the instant motion to dismiss on March 20, 2017.  (DEs 5, 8, 11.)  Rule 12(b) provides that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  However, pursuant to Rule 12(h), the Court construes Defendants' "late" Rule 12(b)(6) motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *See Sheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988) (construing post-answer Rule 12(b)(6) motion as a Rule 12(c) motion).

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b).  *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss.") (citations omitted).  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or 12(c), the Court must "construe the complaint

10

in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

11

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Furthermore, "courts may not rewrite a complaint to include

claims that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[5]

### D.    Discussion

####     1.    The Limitations Periods Have Run on Plaintiff's Claims

As referenced above, the Court Defendants assert that Plaintiff's complaint

should be dismissed because it is time-barred, because it fails to state a claim upon

which relief can be granted, and because Defendants are protected by various

immunities.  I do note in passing, with respect to Defendants Brown and

Tomlinson, that "[a] long line of [the Supreme] Court's precedents acknowledges

that, generally, a judge is immune from a suit for money damages." *Mireles v.

Waco*, 502 U.S. 9, 9 (1991).[6]  Likewise, "[A]bsolute judicial immunity has been

---

[5] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL
2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's
failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic
pleading requirements, including Rule 12(b)(6).").

[6] "Like other forms of official immunity, judicial immunity is an immunity from
suit, not just from ultimate assessment of damages.  Accordingly, judicial

extended to non-judicial officers who perform 'quasi-judicial' duties[,]" like Referee Defendant Burleigh, and "quasi-judicial immunity has been repeatedly extended to court clerks[,]" like Defendant Regan. *Phillips v. Randall S. Miller & Associates*, No. 15-14082, 2016 WL 6651796, *3 (E.D. Mich. July 26, 2016) (report and recommendation of Stafford, M.J.), *adopted* 2016 WL 4607640 (E.D. Mich. Sept. 6, 2016) (Parker, J.).

Nevertheless, because I conclude that this action, like the prior two matters based upon essentially the same factual scenario and timeline, can be dismissed on the basis of the statute of limitations alone, I will not further analyze Defendants' additional arguments.[7] As best as the Court can discern, Plaintiff brings constitutional claims pursuant to 42 U.S.C. § 1983, as well as state-law claims for gross negligence, civil conspiracy, and "kidnapping"—which may be construed as

---

immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id*. at 11 (citations omitted). It is "overcome in only two sets of circumstances[,]" namely, "non-judicial actions" or "actions . . . taken in the complete absence of all jurisdiction." *Id*. (citations omitted).

[7] I do note, however, that Plaintiff's Complaint contains allegations—such as that "those mentioned in this suit have willingly participated in a conspiracy with the Michigan Department of Human Services (DHS) and law enforcement agencies in an effort to obtain federal funds by the illegal seizure of children"—that simply defy common sense and do not reach the threshold for plausibility required to survive a Rule 12 motion to dismiss. *See 16630 Southfield Ltd.*, 727 F.3d at 503 ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct.").

state common law claims for false imprisonment, false arrest or malicious

prosecution.

### a.   Plaintiff's Claims under 42 U.S.C. § 1983

Plaintiff alleges that she brings this action is pursuant to 42 U.S.C. § 1983.

(DE 1 at 77.) Specifically, she alleges that Defendants violated her rights under the

Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.  (See *id.* at 8, 17, 29, 45-

46, 58, 77.)  There is no federal statute of limitations for section 1983 claims.

Rather, "federal courts must borrow the statute of limitations governing personal

injury actions in the state in which the section 1983 action was brought." *Banks v.*

*City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471

U.S. 261, 275-76 (1985)).  In Michigan, the three-year statute of limitations for

personal injury claims outlined in Mich. Comp. Laws § 600.5805(1) governs

section 1983 actions where the cause of action arises in Michigan.  *Carroll v.*

*Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986); *see also Chippewa Trading Co. v. Cox*,

365 F.3d 538, 543 (6th Cir. 2004) (noting that the three-year statute of limitations

outlined in § 600.5805(1) is "borrowed for § 1983 claims.").  However, the accrual

of a section 1983 claim is a question of federal law, with reference to common law

principles.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under those principles,

"the statute of limitations period begins to run when the plaintiff knows or has

reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F3d 211, 220 (6th Cir. 1996).

Here, Plaintiff conceded at oral argument that the last operative event for her claims was March 15, 2010.  Plaintiff's complaint describes events occurring from October 2008 through March 15, 2010 as to Defendants Burleigh, Tomlinson and Brown, and through October 2011 as to Defendant Regan.[8]  Accordingly, Plaintiff was required to bring her section 1983 claims by March 15, 2013 against Defendants Burleigh, Brown and Tomlinson, and by October 17, 2014 against Defendant Regan.  Instead, Plaintiff filed her complaint on November 3, 2016, more than five years after the last possible date of accrual of her claims against Defendant Regan and at least 6½ years after the last possible date of accrual of her claims against the remaining Defendants.  (DE 1.) Therefore, Plaintiff's claims brought pursuant to section 1983 against all Defendants are time-barred and should be **DISMISSED with prejudice**.

---

[8] Despite Plaintiff's concession at oral argument that March 15, 2010 is last date regarding her claims, and that any later-mentioned events in her Complaint are not alleged in this lawsuit as a claim, I note that Plaintiff also included in her Complaint vague allegations regarding her "'unofficial' dealings with the Probate Court" in May and June 2014 regarding a grievance she filed with the Attorney Grievance Commission regarding Guardian Ad Litem Samantha Lord, which was denied.  (DE 1 at 67-70.)  Samantha Lord is not a defendant in this case, and these allegations fails to state a claim against the Court Defendants under section 1983 or state law.

### b.     Plaintiff's State Law Claims

Plaintiff also brings claims for gross negligence, civil conspiracy, and "kidnapping," which appear to be an attempt to state a claim of false imprisonment, false arrest, or possibly malicious prosecution.

The statute of limitations period for gross negligence is three years.  Mich. Comp. Laws § 600.5805(10); *Searcy v. Cty. of Oakland*, 735 F.Supp.2d 759, 765 (E.D. Mich. 2010) ("Under Michigan law, the statute of limitations for . . . gross negligence is three years . . . .") (internal citations and quotations omitted).  The statute of limitations for claims of false arrest, false imprisonment, or malicious prosecution is two years.  Mich. Comp. Laws § 600.5805(2); *see also Mack v. Howell*, 14 F.3d 601, 601 (6th Cir. 1993).  With respect to any of the state law claims, Plaintiff's action is time-barred.  Again, Plaintiff's complaint describes the Court Defendants' allegedly unlawful actions as occurring from October 2008 through October 2011, at the very latest.  (DE 1.)  Plaintiff filed her complaint on November 3, 2016, over five years after the latest possible date listed in her Complaint, and thus her state law claims are time-barred. And given my determination that Plaintiff's section 1983 and state law claims are time-barred, her civil conspiracy claim also fails as a matter of law.  *See Cousineau v. Ford Motor Co.*, 140 Mich. App. 19, 37; 363 N.W.2d 721 (1985) ("An allegation of civil conspiracy, standing alone, is not actionable," and conspiracy "cannot exist

independently of an underlying tortious act."). Therefore, Plaintiff's state law claims against all Defendants should be **DISMISSED with prejudice.**

### 2. The Statutes of Limitations Have Not Been Tolled

#### a. The Criminal Investigation Initiated by Plaintiff Neither Delays Accrual nor Tolls the Limitations Periods

For the fourth time, Plaintiff argues that the criminal investigation which she initiated with the Michigan Attorney General, the MSP, and the FBI somehow extended the time within which she needed to file a civil complaint, in compliance with the respective statutes of limitations. In both of its prior decisions, this Court rejected Plaintiff's argument that the statutes of limitations were tolled during the pendency of the criminal investigation. In those prior cases, the Court explained that the pleadings make clear that Plaintiff was well aware of the injury that is the basis of this action in 2008, 2009, and certainly by March 15, 2010, the date on which the government's second case against them was closed. (Case No. 15-12738, DE 29 at 6-10; Case No. 16-13906, DE 21 at 10-11.)

In her response brief, and during oral argument, Plaintiff argues that statutes of limitations may be tolled pending parallel criminal proceedings, and cites *Peden v. United States*, 512 F.2d 1099, 1103 (Fed. Cir 1975) and *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1204 (Fed. Cir. 1987) for the proposition that "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way." (DE 13 at 20-21.)

17

According to Plaintiff, *Peden* and *Afro-Lecon* dictate that the statutes of limitation are tolled during the pendency of a criminal investigation. While it may be true that civil proceedings may be *stayed* during the pendency of criminal proceedings in certain circumstances, this concept is inapplicable here, as there was no pending civil suit for which Plaintiff could have sought a stay during the pendency of the criminal investigation. There is a difference between a "stay" of a proceeding already filed, as opposed to the "tolling" of a statute of limitation for a proceeding not yet filed. And, as Defendants explain, in determining whether a statute of limitations is to be tolled for section 1983 claims, the Court is to apply Michigan's tolling provisions. (DE 14 at 9, citing *Hardin v. Straub*, 490 U.S. 536, 538-40 (1989).) Under Michigan law, tolling is only permitted under specific statutorily designated circumstances—not present here—and there is no other equitable tolling of the statute of limitations under Michigan law. (*Id.*)

Further, as this Court cited with approval in its prior decisions, "[i]n the absence of substantial prejudice to the rights of the parties involved, [] parallel [criminal and civil] proceedings are unobjectionable under our jurisprudence." *See Sec. & Exch. Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). Likewise, and as also quoted previously by this Court, "[i]t is clear that nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment, and there is no requirement that a civil proceeding

18

be stayed pending the outcome of criminal proceedings." *FTC v. E.M.A.*

*Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). Similarly, under state law, the

Michigan Court of Appeals has held that a pending criminal matter does not toll

the time to file a civil action. *Atty. Gen. v. Harkins*, 669 N.W.2d 296, 302 (Mich.

Ct. App. 1992). Accordingly, the applicable statutes of limitations were not tolled

by the criminal investigation initiated by Plaintiff.

### b. The Kidnapping Claim Does Not Excuse this Case from the Applicable Limitations Statutes

Plaintiff again argues, as she did in her prior cases, that according to the

federal criminal code at 18 U.S.C. § 3299, her kidnapping claim—based on the

arrest of her son and the removal of her children from her home—may be

"instituted at any time without limitation." (DE 13 at 21-22.) Leaving aside the

issue of whether Plaintiff, as a non-attorney, even has standing to pursue a

kidnapping claim on behalf of another individual without being appointed his or

her next friend or guardian, as this Court has twice explained, <u>there is no private</u>

<u>right of action under the Federal Kidnapping Act</u>:

> Upon de novo review, this Court agrees with the magistrate judge;
> there is no private right of action for purported violations of the
> Federal Kidnapping Act. *See, e.g., Monroe v. McNairy Cnty., Tenn.*,
> 850 F. Supp. 2d 848, 876 (W.D. Tenn. Feb. 6, 2012) ("[T]he Federal
> Kidnapping Act is a criminal statute, and there is no indication that
> Congress intended to create a private right of action for violations of
> its provisions."); *Giano v. Martino*, 673 F. Supp. 92, 95 (E.D.N.Y.
> 1987) ("[T]he Federal Kidnapping Act was never intended to confer
> rights on the victim of a kidnapping, and does not do so by its

language."), *aff'd*, 853 F.2d 1429 (2d Cir. 1987) (Table). The Court finds the substantial breadth of authority on this issue persuasive and declines Plaintiffs' invitation to "take a step into the unknown[.]"

(Case No. 15-12738, DE 29 at 5; *see also* Case No. 16-13906, DE 21 at 7-9.)[9]  The Court also previously explained that Congress's use of the words "indictment" or "information" in 18 U.S.C. § 3299 was entirely appropriate and does not suggest the creation of a civil cause of action for kidnapping, as Plaintiff argued at the hearing.  (Case No. 16-13906, DE 21 at 8-9.)[10]   Accordingly, Plaintiff lacks standing to bring a claim under 18 U.S.C. §§ 1201, 3299, and the statutes do not "excuse" the applicable statutes of limitations.

---

[9] Plaintiff argued at the hearing that she has stated an implied cause of action for kidnapping under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  However, in *Bivens*, the Supreme Court recognized an implied private action for damages action against *federal officials* alleged to have violated a citizen's constitutional rights.  42 U.S.C. § 1983 provides a parallel avenue of recovery for constitutional violations by state actors.  Without addressing whether Plaintiff has or could state a *Bivens* claim for kidnapping, Defendants here are all state actors, not subject to a *Bivens* claim.

[10] As the Court previously explained, both an "indictment" and an "information" are "distinct methods of initiating a criminal proceeding."  An "indictment" is a "'formal written accusation of a crime, made by a grand jury and presented to a court for prosecution against the accused person,'" while an "information" is a "'formal criminal charge made by a prosecutor without a grand-jury [sic] indictment.'"  (Case No. 16-13906, DE 21 at 8-9) (quoting Black's Law Dictionary at 842, 849 (9th ed. 2009).)

### E.  Conclusion

For the reasons stated above, the Court should grant the Court Defendants' motion to dismiss (DE 11) and **DISMISS** this action **WITH PREJUDICE** as barred by the applicable statutes of limitations.

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object `to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

**IT IS SO ORDERED.**

Dated: December 4, 2017          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record
on December 4, 2017, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti