1               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
2                  SOUTHERN DIVISION

3

4  PAMELA SUZANNE HARNDEN,

5             Plaintiff,

6    -v-                 Case No. 16-13904
                         16-13905
7

8  ST. CLAIR COUNTY 31ST
   DISTRICT COURT,

9

10             Defendant./
   _____

**MOTIONS TO DISMISS**

**BEFORE HON. ANTHONY P. PATTI**

United States Magistrate Judge
Theodore Levin U.S. Courthouse
231 West Lafayette Boulevard
Detroit, Michigan 48226

**(Tuesday, November 7, 2017)**

APPEARANCES:      PAMELA SUZANNE HARDEN
                  Appearing in pro se.

                  TODD J. SHOUDY, ESQUIRE
                  Appearing on behalf of the Defendants.

TRANSCRIBED BY:   MARIE METCALF, CVR, CM
                  Federal Official Court Reporter
                  867 U.S. Courthouse
                  231 W. Lafayette Boulevard
                  Detroit, Michigan 48226
                  metcalf_court@msn.com

*(TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING;*
*TRANSCRIBER NOT PRESENT AT PROCEEDINGS)*

1

1                              **TABLE OF CONTENTS**

2

3    PROCEEDINGS — TUESDAY, NOVEMBER 7, 2017

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Harnden v. St. Clair County 31st District Court*

1        Detroit, Michigan

2        Tuesday, November 7, 2017

3        At 2:16 p.m.

4                        *    *    *

5        DEPUTY COURT CLERK:  All rise.  United States

6   District Court for the Eastern District of Michigan is now in

7   session, the Honorable Anthony P. Patti, United States

8   Magistrate Judge, presiding.  You may be seated.

9        The Court now calls cases 16-13904 Harden versus St.

10  Clair County, et al., and case number 16-13905, Pamela

11  Suzanne Harnden versus St. Clair County 31st District Court.

12        THE COURT:  Okay.  Your appearances for the record,

13  please?

14        MR. SHOUDY:  Your Honor, on behalf of the defendants

15  in both cases, Todd Shoudy.

16        THE COURT:  Okay.

17        MS. HARNDEN:  Pam Harnden, petitioner.

18        THE COURT:  All right.  Well, nice to meet you both.

19        Mr. Shoudy, these are your motions, so why don't you

20  go first.

21        MR. SHOUDY:  Thank you, Your Honor, and good

22  afternoon.

23        We're before the Court on two of -- on two separate

24  cases, a motion to dismiss.  There is one issue in common in

25  both cases, and that is the statute of limitations defense.

*Harnden v. St. Clair County 31st District Court*

1    We raised that in both cases and I also note, and the Court

2    is familiar with this, there have been two other cases

3    involving the same core group of facts and circumstances that

4    have been filed by Ms. Harnden, and the Court has already

5    ruled on both of those with an initial report and

6    recommendation from Your Honor.

7        And then both of those cases have gone up to Judge

8    Goldsmith, and a ruling has been issued on both of those.  I

9    believe I cited one of those in my motion, after my motion

10   was submitted and all the paperwork was done, and the

11   briefing was done on that.

12       There was a second decision by Judge Goldsmith which

13   addressed this identical issue and held that the claims were

14   barred by the statute of limitations.

15       And so I believe this would be the third time that

16   this issue is before Your Honor, and I believe the

17   circumstances are identical.  The statute of limitations

18   defense clearly applies to both of these lawsuits.

19       THE COURT:  Now, the parties have not been the same

20   in each suit, have they?  In fact, they're not even the same

21   in these two suits.

22       MR. SHOUDY:  Correct, Your Honor.  So the plaintiff

23   is the same, the background facts, if you will, are the same,

24   but the defendants in all four separate lawsuits have been

25   different.

*Harnden v. St. Clair County 31st District Court*

1        And so, the circumstances that have been alleged are

2   based upon events that largely came to a conclusion at the

3   very latest by March 15, 2010.

4        There's a couple of claims that spill over into 2011

5   as to specific defendants.  Either way, the lawsuits were

6   filed in November of 2016.  There was a three-year statute of

7   limitations, which is the longest statute of limitations as

8   to any of the claims.  Some of the claims would be subject to

9   a two-year.  The claim based upon the Michigan Freedom of

10  Information Act claim would be 180 days statute of

11  limitations.

12       All of these claims, the statute of limitations ran

13  several years before the lawsuits were filed, and that's the

14  primary argument in both cases.

15       I also raised some additional arguments, but I think

16  I'll let the briefs stand, unless the Court has any questions

17  on those.

18       THE COURT:  You know, I would actually, even though

19  I know that we're really looking at the pleadings here for

20  the most part because the dates were contained in the

21  pleadings, but nevertheless, I mean, even though it is, as

22  you point out, the fourth such case -- third and fourth such

23  cases that I've had before me in the last year and-a-half or

24  so, if you would give me a little bit of a thumbnail sketch,

25  and I don't normally do this, of the facts, understanding

*Harnden v. St. Clair County 31st District Court*

1    that the two sides don't agree with what the facts are, of

2    course, but -- and ultimately telling me the facts as pled by

3    the plaintiff and ultimately what the outcome was, and when

4    you believe the outcome became definitive.

5         MR. SHOUDY:  I believe the background facts start in

6    October of 2008, and the background facts center around what

7    basically was a DHS investigation, Child Protective Services,

8    that then involved some of the plaintiff's minor children.

9         The plaintiff had some biological children, some

10   adopted daughters and some foster children, and an

11   investigation started in 2008.  There was an arrest made of

12   the plaintiff's then 15-year-old son.  I think he's referred

13   to in the complaint as "Bobby."

14        THE COURT:  He was a natural child or a foster

15   child?

16        MR. SHOUDY:  A natural child, I believe, Your Honor.

17        THE COURT:  Okay.

18        MR. SHOUDY:  And again, Your Honor, I've gone based

19   upon the complaint.  I have read the police reports as well,

20   but -- and then the claim in the lawsuit is that the -- when

21   DHS became involved, they removed some of the children.

22        The normal process is when Child Protective Service

23   gets involved, and then the Sheriff's Department gets

24   involved, one or the other will start a petition process

25   before the Court to determine where the child should be

*Harnden v. St. Clair County 31st District Court*

1    placed, and then there is a probable cause hearing to

2    determine whether or not there was probable cause to support

3    the petition, which is the request to remove a child from

4    harm's way.

5           So what the case centers around is the removal by

6    the officers, and the Child Protective Services who are --

7    who were parties to the earlier cases, and then the case is

8    prosecuted as to the issue involving the 15-year-old son.

9           The prosecuting attorney's office also represents

10   the DHS in termination proceedings, so you have a prosecuting

11   attorney involved in court proceedings, representing the

12   state, and then you have the judges who are handling all of

13   those matters, go through multiple levels.

14          There's hearings on multiple children.  There's an

15   investigation on multiple children, and ultimately, all of

16   the proceedings according to the complaint, end by, I believe

17   the day is March 15, 2010.

18          So that's --

19          THE COURT:  What's March 15th of 2010?

20          MR. SHOUDY:  Correct.  So that would be the last

21   event of when all of the court proceedings are concluded.

22          THE COURT:  That's the conclusion of the second

23   trial, right?

24          MR. SHOUDY:  Correct.

25          THE COURT:  And what's the outcome?

*Harnden v. St. Clair County 31st District Court*

1      MR. SHOUDY:  Your Honor, I'm not sure on that, to be

2   honest with you.  I kind of lost track of --

3      THE COURT:  Is there an acquittal?  Is everybody

4   clear of these charges, ultimately?

5      MR. SHOUDY:  I believe the proceedings are completed

6   there.  I thought there was a jury decision that found that

7   the -- by a preponderance of the evidence there was

8   sufficient basis to support the petition regarding the child.

9      But a lot is going on during that whole process as

10   well.  So basically, it's all over by the 15th.  I don't

11   believe there's any further legal proceedings after the 15th

12   of March, 2010.

13      And then there is a claim in the lawsuit against the

14   Sheriff's Department, and after that was concluded, there was

15   a Freedom of Information Act request that was initially --

16   you know, some information was provided, and that would have

17   been 2011.  And then there was also in 2011, I believe there

18   was a request for a copy of the transcript from the trial,

19   which is the basis of the claim against the court reporter,

20   Ms. Regan.

21      So all of the events claimed in the lawsuit, none of

22   them go into 2012.  Everything raised in the lawsuit is over

23   at the very latest by 2011 as to most of the plaintiff's --

24   or most of the defendants.

25      THE COURT:  What's 2011?  What happened then?

*Harnden v. St. Clair County 31st District Court*

1         MR. SHOUDY:  I believe she indicates in her

2  complaint that she requested a copy of the transcript, and

3  the court reporter for the court was slow in providing the

4  transcript.  The final transcript was not provided until

5  sometime in 2011, I believe is the allegation.

6         THE COURT:  Now, as to the court reporter, I'm

7  leaving aside the statute of limitations issue for a minute.

8         MR. SHOUDY:  Yes.

9         THE COURT:  As to the court reporter, she's not

10  entitled to absolute immunity, just qualified immunity,

11  correct?  She or he.  I don't know whether --

12         MR. SHOUDY:  Right, correct.  Except with one

13  proviso, Your Honor.

14         THE COURT:  It's a she, isn't it?

15         MR. SHOUDY:  It is a she.  It's Christine Regan, I

16  believe.

17         THE COURT:  Right, Christine Regan.

18         MR. SHOUDY:  The only exception to that is she would

19  be -- judicial immunity would apply to the extent she's --

20  you know, there's a claim that there was a conspiracy, that

21  the Judge was involved in the conspiracy, directing her to do

22  something.

23         So to the extent there is a conspiracy claim against

24  her involving the Court, and she is acting in her role as the

25  court reporter, and is allegedly being given directions from

*Harnden v. St. Clair County 31st District Court*

1   the Court, then arguably, there would be judicial immunity.

2   But normally, there would not be.  It would normally be

3   qualified immunity.

4            THE COURT:  Was she show-caused for that?

5            MR. SHOUDY:  I don't believe so, Your Honor.  I'm

6   not aware of that, no.  It's not alleged in the complaint.

7            THE COURT:  Under what circumstances would a court

8   reporter be not immune?  Let's put it that way.  What types

9   of things could a court reporter do that would make them

10  subject to suit?

11           MR. SHOUDY:  Well, I -- I did cite to the Court, the

12  United States Supreme Court decision that's referenced in the

13  brief, and if the court reporter --

14           THE COURT:  Which is what I'm looking for as we

15  speak.

16           MR. SHOUDY:  -- fails to follow -- I believe --

17  yeah.  The case I believe dealt with a situation where --

18           THE COURT:  *Antoine versus Byers*, that one?

19           MR. SHOUDY:  Correct.  Correct, Your Honor.

20           And if I recall that case, the Supreme Court dealt

21  with the situation where somebody's rights were allegedly

22  prejudiced, their constitutional rights were prejudiced by

23  the court reporter not providing a transcript.

24           I believe there was all kinds of issues in that case

25  with the, you know, the court reporter lost tapes, was unable

*Harnden v. St. Clair County 31st District Court*

1    to provide a transcript, complete transcript, had to use

2    notes, that kind of thing.  So that was an unusual

3    circumstance.

4         In this case, what we have is a claimed delay in the

5    transcript, but there is no claim that any constitutional

6    rights were somehow implicated by that.

7         THE COURT:  Was that -- well, I guess there was a

8    criminal case -- maybe not.

9         MR. SHOUDY:  Yeah, that was the -- I believe that

10   was from the termination proceedings or the petition to

11   determine whether or not there was probable cause on the

12   petition involving the children.

13        And I apologize, Your Honor, I didn't -- it's kind

14   of a complicated fact pattern.  I wasn't part of that when it

15   happened.  And I'm going based upon the allegations of the

16   complaint.  And I have read some materials, as well.

17        I believe this is a -- you know, based upon the

18   allegations of the complaint, you know, I tried to address

19   those in my pleadings with the Court.

20        THE COURT:  The other thing I would like you to

21   address, it's raised in the -- in Ms. Harnden's brief, is the

22   question of the referee's jurisdiction.  She mentions that

23   the referee issued a pickup order.  I'm not sure if that was

24   in conjunction with the circuit court judge or not.

25        And then it was outside of St. Clair County, but

*Harnden v. St. Clair County 31st District Court*

1    instead, I believe required pickup in Sanilac, if I got this

2    right, and therefore, was outside the jurisdiction.  And

3    therefore, she argues that he's not entitled to immunity

4    because he was essentially acting ultra vires, he was acting

5    outside of the realm of his authority.

6         MR. SHOUDY:  Yes, Your Honor.  Let me address that.

7         So Ms. Harnden, as I understand it, lives in St.

8    Clair County.  That was the residence of the children at

9    issue.  The Court has jurisdiction over child protection

10   issues within St. Clair County.  I cited the statute to the

11   Court on that, to that effect.

12        And I believe the pickup order was actually entered

13   by the circuit court -- or the district court judge, which I

14   believe was one of the two district court judges.  I can't

15   recall which.

16        THE COURT:  Are Brown and Tomlinson both district

17   court judges?

18        MR. SHOUDY:  Yes.  They would be state district

19   court judges.

20        THE COURT:  All right.

21        MR. SHOUDY:  One I believe is -- I believe one is --

22   or both of them are probate judges, but they function as a

23   district court judge as well.

24        And so the pickup order was to pick up the child,

25   but there is nothing that would prohibit somebody from

*Harnden v. St. Clair County 31st District Court*

1    crossing a county line to pick up a child.  There is nothing

2    that would prohibit that order from being enforced throughout

3    the state of Michigan as a state court judge.

4         THE COURT:  And you said there's nothing that

5    required them to go across the county line?

6         MR. SHOUDY:  Well, the -- as I understand the

7    residence, it's fairly close to the county line, but the

8    children went to Cros-Lex Community Schools, which is in

9    Sanilac County.

10        So if they were picked up at school, they would be

11   picked up in Sanilac County, but there is nothing that would

12   prevent a pickup order from crossing a county line.

13        And then second of all, I would state that the

14   doctrine of judicial immunity is not lost when there is some

15   question about jurisdiction.  It's only when somebody acts,

16   when a judge acts in the complete absence of jurisdiction.

17        Otherwise, state court judges would always be

18   subject to liability any time they make a judgment call about

19   their jurisdiction and a court later determines that they

20   didn't have the jurisdiction.

21        That's not one of the exceptions.  The exception to

22   judicial immunity is a very narrow one.  It does not go that

23   broadly.

24        THE COURT:  So in other words, this pickup order is

25   -- does it kind of get put in something like a LEIN system

*Harnden v. St. Clair County 31st District Court*

1    essentially, where it's issued in a particular county,

2    because it has to be issued somewhere, but then it's

3    statewide from that point on?

4            MR. SHOUDY:  Yes.  Yeah, usually pickup orders would

5    be entered into -- that type of order would be entered into

6    the LEIN system, which is a state system, which would be

7    statewide.

8            THE COURT:  As you might not be surprised to hear,

9    in federal court, we don't issue those, so it's not our

10   normal bailiwick.

11           Anything else you want to tell me?

12           MR. SHOUDY:  No, Your Honor.  If there's any

13   additional questions you have, I would be happy to answer

14   those.

15           THE COURT:  Well, I'll give you some time for

16   rebuttal after Mrs. Harnden is done.

17           MR. SHOUDY:  All right.  Thank you, Your Honor.

18           MS. HARNDEN:  I have never done this before.

19           THE COURT:  Okay.  Come right up to the microphone,

20   and speak loudly so everybody can hear you.

21           MS. HARNDEN:  Okay.

22           THE COURT:  And I know the courtroom setting could

23   be a little bit intimidating, and that's -- we're friendly

24   here, so it's all right.

25           MS. HARNDEN:  So I just answer basically -- address

                                                              14

*Harnden v. St. Clair County 31st District Court*

1   what he -- or do I answer --

2           THE COURT:  Well, why don't you first of all come

3   really right up to the microphone, because this -- the

4   courtroom acoustics are terrible, so -- but why don't you

5   tell me what you want to tell me about this case.  And then

6   I'll have some questions.

7           MS. HARNDEN:  Okay.  Well, first in regard to --

8   I'll just address what he mentioned.  In regard to the

9   statute of limitations, I also did put in my replies about

10  the *Hayden v. United States*, where they do allow for civil

11  cases to toll or freeze while criminal proceedings or

12  investigations are warming up or under way.  That way the

13  constitutional rights of everyone are not being violated.

14          And yes, the case -- our initial case with DCS

15  opened on October 20, 2008.  But we went to the FBI in

16  January of 2010, and they did open a criminal investigation

17  into most of the people who are listed on these two cases, as

18  well as the other case that -- 13906.

19          Therefore, I cited *Peden* because I didn't -- I would

20  like justice.  I'm fighting for justice for my family.  So

21  I'm not going to ask the court systems to violate the

22  constitutional rights of other people, and compromise those

23  by having civil cases filed at the same time as the criminal

24  investigation was warming up or underway.

25          So I did not receive a phone call from FBI agent

*Harnden v. St. Clair County 31st District Court*

1    Danielle Christianson until November 12, 2014, in which she

2    told me that they were not able to get warrants from the U.S.

3    Attorney's office, therefore, she had to close the case, and

4    then advised me that I could now proceed with civil

5    proceedings if I chose to.

6          So my first case that I filed was in November of

7    2015.  These cases were November 2016, which are clearly

8    within the three-year statute of limitations from the closing

9    of the criminal investigations.

10         THE COURT:  And I understand you made that argument,

11   in -- and I think you understand, previously I did a report

12   and recommendation which rejected that argument, and that

13   Judge Goldsmith agreed with that, because there is no

14   authority that I'm aware of whereby the FBI investigation

15   would toll the statute of limitations.

16         You understand the concept of tolling, because I

17   think you've addressed it in your briefing.

18         So I understand there was an investigation going on,

19   but what kept you during that time from filing a lawsuit, and

20   basically saying, "This investigation is taking too long.  My

21   statute is about to run out.  I've got to file, and I'm

22   filing."

23         MS. HARNDEN:  Because they -- we were advised by

24   attorneys, and by the FBI, that the civil proceedings were

25   not supposed to go on at the same time as criminal

*Harnden v. St. Clair County 31st District Court*

1    proceedings.

2            THE COURT:  Do you have any legal authority, though,

3    that the FBI investigation tolls the running of the statute

4    of limitations?

5            MS. HARNDEN:  Basically, just -- the only one I

6    could really find was the *Peden*, and it's -- just brief

7    pieces out of it, if I can find the right spot.  I do not

8    find the right spot.

9            Anyway, it refers to warming up and being -- the

10   cases -- the investigation being warming up and under way.

11           It's on page six, page ID 171:

12               "We believe it has long been the practice to

13           freeze civil proceedings when a criminal

14           prosecution involving the same facts is warming up

15           or underway.

16               In the context of appeals from civil service

17           adverse actions, we have repeatedly approved this

18           practice.  The freeze, we think is not for the

19           protection of the employee only, but rises out of

20           the sense that a deferable civil proceedings

21           constitute improper interference with the criminal

22           proceedings if they turn over the same evidentiary

23           material."

24   And it goes on to say there at the end that,

25               "We agree with this flexible approach and

*Harnden v. St. Clair County 31st District Court*

1          believe it is particularly appropriate where

2          constitutional issues -- or constitutional rights

3          are an issue."

4     And as the FBI is the -- basically the investigating police

5     for the federal government, we just assumed that a criminal

6     investigation by them would be the same as a criminal

7     investigation by a lower police, law enforcement.

8          THE COURT:  In Michigan, there's a tort called

9     conversion.  And conversion basically is a fancy way of

10    saying stealing.

11         Let's say someone stole something from you, and the

12    police are investigating and they investigated for a year,

13    two years, three years.  But of course, the statute of

14    limitations for conversion is like two years.

15         What would there be to prevent you from filing your

16    civil case for conversion, despite the fact that the police

17    were dragging their feet in investigating?

18         MS. HARNDEN:  Well, the police weren't dragging

19    their feet.  The dragging was coming from the U.S. Attorney's

20    office with not issuing the warrants that we requested.

21         Other than that, we did have a fear of retaliation

22    from the people whom we would be filing the lawsuits against.

23    We actually were advised at one point -- the FBI did ask the

24    Michigan State Police to call us.  I talked to Trooper

25    Danielle Craig, and when she called and I described the

*Harnden v. St. Clair County 31st District Court*

1   situation, she advised us to move out of the county for our

2   safety.  And unfortunately -- and she also said she was going

3   to forward that through the Michigan State Police Department,

4   but nobody ever picked that up.

5          So when we went back to the FBI, we had satisfied

6   the statutes under RICO, so that, you know, we went to the

7   local law enforcement and they wouldn't help us out.  So we

8   went back to the FBI and they continued to keep it open.  But

9   fear for our family.

10          THE COURT:  Now, these two lawsuits that are at

11  issue today were both filed November 3rd of 2016.

12          The first question I guess I have is, why two

13  lawsuits and not one at that time, since they were both filed

14  the same day and I think you have case numbers that are one

15  digit apart?

16          MS. HARNDEN:  Yeah.  I did that separately because

17  we -- they're in their individual capacities because, yes,

18  they all work for the same department, but each person has an

19  individual responsibility for the things that they did.

20          I did it all together like based on department.  As

21  you can see, the 13904, and envelopes the people who work at

22  the St. Clair County Sheriff's Department.  And I put the

23  prosecutor's office in there as they're the top law

24  enforcement agency in the -- or the law enforcement agency.

25          And then I kept the court's together just for, I

*Harnden v. St. Clair County 31st District Court*

1    guess, simplicity.  And also, so that the cases weren't even

2    bigger than -- you know, the complaint wasn't even bigger

3    than what they were.

4         THE COURT:  Now, in the prior two lawsuits, one of

5    which was initially filed in the name of your husband, I

6    guess, Robert, and the children, et al, and I think it

7    included you as well, and that was docket number -- or case

8    number 15-12738.

9         I issued two reports and recommendations in that

10   case, and ultimately that led to the dismissal of that case,

11   which -- because Judge Goldsmith accepted those.

12        And those -- the last of those reports and

13   recommendations was filed April 11th of 2016.  But then these

14   lawsuits got filed, alleging many of the same theories just a

15   few months later in November of the same year.

16        And I'm -- I believe in that case, among other

17   things, I noted that, for example, kidnapping is not a cause

18   of action.  Statute of limitations was a problem because more

19   than three years had passed since the last event and so

20   forth.

21        Why are these any different?  Why should -- I have

22   to try to be consistent with what's been done before, and so

23   why should you be able to file these after already hearing

24   from the Court on those?

25        MS. HARNDEN:  Well, I have a lot of -- I've learned

*Harnden v. St. Clair County 31st District Court*

1    a lot, running -- doing the first ones.  I'm not an attorney.

2    And I also found different case precedents to use and, you

3    know, kind of learned what I was and was not supposed to have

4    in complaints and in replies and all that.

5            So I felt with learning, you know, from my mistakes

6    in the first one, finding new case precedents and other

7    opinions that I felt helped to bring my cause, that is why I

8    wrote the next three.  And it takes time.

9            THE COURT:  I know, because I've practiced law for

10   25 years.  My concern -- and do you prefer I call you Ms.

11   Harnden, Mrs. Harnden?

12           MS. HARNDEN:  Mrs.  I am married, so --

13           THE COURT:  Okay.  Mrs. Harnden, the -- my concern

14   is that if I -- if it turns out that there is not enough

15   different here, and I'm going to look at the authority you've

16   cited, of course, --

17           MS. HARNDEN:  Uh-huh.

18           THE COURT:  -- but if it turns out that the law is

19   just against you on the statute of limitations, that there's

20   nothing about the FBI investigation that would have tolled

21   the statute and that the statutes are clearly, for lack of a

22   better term, blown, --

23           MS. HARNDEN:  Uh-huh.

24           THE COURT:  -- and then I have to recommend yet

25   again to Judge Goldsmith that the cases should be dismissed,

*Harnden v. St. Clair County 31st District Court*

1    my concern is that if you continue to file, that at some

2    point the Court might sanction you or do something drastic,

3    because at some point, the Court loses its patience.

4          And I don't want to say that happened.  The normal

5    -- the normal course of action is if you disagree with the

6    Court and you think the Court got it wrong, you file an

7    appeal.

8          MS. HARNDEN:  Uh-huh.

9          THE COURT:  And there is a court above us.  They are

10   actually geographically below us because they are in

11   Cincinnati.  And so that's why I'm trying to see what the

12   distinctions are, other then the fact that you are better

13   educated in the process.

14         Is there anything beyond that that makes these

15   different?

16         MS. HARNDEN:  Well, one thing that I found this last

17   week was the constitutional and implied right to action.

18   Yes, there is no -- I have not found, as you said, any

19   straight up -- yes, Congress does not have the statute that

20   says you can sue for kidnapping in the civil, because, you

21   know, kidnapping is over here on the criminal code.

22         But as I stated -- I'm sure I stated in one of my

23   briefs, most people who kidnap are in jail, and when people

24   are in jail, you cannot sue them civilly.

25         In our case, the kidnapping was substantiated by the

*Harnden v. St. Clair County 31st District Court*

1   FBI, but no one has been arrested.  And therefore, we aren't

2   -- since the criminal avenue has closed for us, we went the

3   civil avenue.  And I want to say it was *Bivens v. Six Unnamed*

4   --

5           THE COURT:  Six agents.

6           MS. HARNDEN:  Yeah. unknown agents.

7           THE COURT:  Yes, it's a very famous case.

8           MS. HARNDEN:  Yes.  And in that, it does talk about

9   constitutional rights of action, and an implied right to

10  action.  And I would have to say that in these cases, my

11  right to action is based on constitutional violations and

12  would be implied because there is no set statute.  There is

13  no set statute.

14          THE COURT:  Well, one of the things that I addressed

15  in the -- at least the last of the report and recommendations

16  that I did, is the issue, and I think I might have done it in

17  all of them, is that there is a common law cause of action

18  that you can allege against people.  It's not kidnapping, but

19  it's a lot like it.  It's called false imprisonment.

20          MS. HARNDEN:  Right.

21          THE COURT:  But that again has a statute of

22  limitations, and it's two years, I believe, in Michigan.

23          MS. HARNDEN:  I think so.

24          THE COURT:  And so, you know, when did that false

25  imprisonment, if we call it that, occur?

*Harnden v. St. Clair County 31st District Court*

1    MS. HARNDEN:  For the -- well, it would end -- the

2    last child came home December 14, 2009.  The criminal

3    investigation was opened January 2010.

4         But there's also the -- basically, kidnapping falls

5    under the Fourth and Fourteenth Amendment, where I have a

6    right to security in my persons, and my property and my --

7    and which would be my children at that time, because I'm

8    responsible for them.

9         And they did not have -- they were not secure.  And

10   they were taken from me without signed pickup orders, without

11   an officer of the law, and out-of-county.

12        THE COURT:  And as you -- I think you know from my

13   last report and recommendation -- and I -- because you know,

14   when we're looking at these things, we're not deciding --

15   it's not a trial, so we're not deciding you're right, or

16   they're right, or what you say is true or what they say is

17   true.

18        But my last report and recommendation which was

19   issued in May of this -- May 31st of this past year, in case

20   number 16-13906, as I noted:

21             "In reviewing the motion to dismiss, plaintiff's

22             factual allegations are assumed to be true, and if

23             in fact they are true, --"

24   I wrote,

25             "-- the plaintiff has generally alleged what can

*Harnden v. St. Clair County 31st District Court*

1          accurately be described as a nightmare, and

2          namely, a several-year battle with government

3          officials based upon false accusations of child

4          neglect and abuse, all of which terminated in her

5          and her husband ultimately being vindicated

6          through multiple administrative and judicial

7          proceedings."

8     But the issue, when we're talking about the statute of

9     limitations is whether it's too late to make that case.  Even

10    if you're right, and even if I sympathize, and even if I were

11    to think all this was true, and I don't know, because we

12    haven't had a trial.  But even if true, essentially we're

13    saying with the statute of limitations it's too late to make

14    that claim.  There was a time sometime earlier where you

15    could have, and we might have been able to flush that out.

16          And again, why, if the children were returned in

17    December of 2009, and now it's approaching December 2017,

18    which is quite a few years later, eight years later, why

19    would that be permissible at this late date?

20          MS. HARNDEN:  All I have is *Peden*, where they --

21    just to protect the civil rights of all parties, because that

22    is why they have a normal practice of allowing a freeze or a

23    tolling while criminal investigation is under way.

24          THE COURT:  The other thing, as you know from the

25    motion, beyond the statute of limitations, even if I were to

*Harnden v. St. Clair County 31st District Court*

1   agree with you that somehow the statutes are tolled and it's

2   not too late to have filed, the defendants have also said

3   that they are immune from suit.

4        MS. HARNDEN:  Uh-huh.

5        THE COURT:  And when you disagree with what a judge

6   does, as I said, you go to the Court of Appeals.  You can do

7   that.  There's a remedy.  And for good reason, the courts

8   don't condone suing judges.  It's very hard to do.  Just like

9   it's very hard to sue the president or a member of congress.

10       What takes this in any special direction that would

11  allow you to do that?  Let's say -- let's start with the

12  judges that you have sued.

13       MS. HARNDEN:  The judges, I -- in regard to Mr. --

14  Judge Tomlinson, he was the first one that allegedly signed

15  the pickup order on October 20th or 21st of 2008.

16       It is a St. Clair County Circuit Court.  And every

17  law enforcement officer -- my father is a police office, my

18  brother is a police officer, and when I ask them, "Hey, can

19  you take a court order from one county into another," the

20  answer is "no."

21       And they also are supposed to have the specific

22  address where they are to be picked up.  And they are also

23  specifically to describe the person and/or thing that I

24  suppose in this case, the persons that are to be seized.

25       That was not done.  There is no specific address,

*Harnden v. St. Clair County 31st District Court*

1    which, you know, I don't even know if they had the address,

2    but from what I understand the CPS worker called the school

3    and asked them to keep my daughter off the bus.

4         And I did not see the first copy of the pickup order

5    until December 6th of 2008, and I had to purchase one

6    December 11, 2008.  I was never given a copy of the pickup

7    order when they took my children from me.

8         My daughter was seven at the time.  She was at

9    school.  She was scared.  And she did not know the people to

10   whom she was going.  The pickup order was not filled out.

11   There was no address on it, which was a clear violation of

12   the Fourth Amendment.

13        She was not specifically described.  Our other

14   daughter at the time was 15.  They did take her from inside

15   the county, but again, there was no address.  They just

16   showed up at the house to which they told me to take her the

17   night before.  They just showed up and took her.  And I had

18   no clue where my children were until I got a phone call at

19   5:19.

20        THE COURT:  Which, as I said, is every parent's

21   nightmare.

22        MS. HARNDEN:  Yeah.

23        THE COURT:  But assuming all that to be true, and

24   assuming that there's a constitutional violation, I think

25   you've clearly understood it, that comes under Title 42 of

*Harnden v. St. Clair County 31st District Court*

1    the United States Code Section 1983, or otherwise known as

2    "1983 claims," where you sue for violation of federal

3    constitutional rights.  Those you have, but you would agree

4    that the statute of limitations for that is three years,

5    isn't it?

6              MS. HARNDEN:  Yes.

7              THE COURT:  Okay.  And again, we're back to the same

8    problem.  If nothing tolls that statute, then even if all

9    true, and even if these would have been claims that you could

10   have filed a long time ago back in 2012, let's say, and even

11   if they would have been successful claims, it would be too

12   late now, wouldn't it?

13             MS. HARNDEN:  If the kidnappings criminally has no

14   statute of limitations, we assume that there is no statute of

15   limitations civilly as well.  It wouldn't make sense to have

16   a different statute for one than the other.

17             And also in the 3299, it has that little word "or"

18   and when I looked up the definition of "indictment" and of

19   "information," one of them is for bringing a -- basically

20   it's a civil suit, because it's for righting a wrong that has

21   been done.  And the other one is a formal criminal charge.

22             And so it would be under our understanding that if

23   there's no statute of limitations for kidnapping criminally,

24   there would be no statute of limitations for kidnapping

25   civilly, which would then, since my child -- my first two

*Harnden v. St. Clair County 31st District Court*

1   children were kidnapped on October 21st of 2008, everything

2   after that would be allowed.

3           THE COURT:  Well, would you agree with me that

4   since, because I think you have already conceded that the

5   federal statute doesn't permit a civil action for kidnapping

6   --

7           MS. HARNDEN:  Uh-huh.

8           THE COURT:  -- because it's a criminal code statute.

9   And then we discussed a few moments ago the fact that there's

10  a common law claim for false imprisonment under state tort

11  law, but that does have a statute of limitations, doesn't it?

12          MS. HARNDEN:  Yes, uh-huh.

13          THE COURT:  Two years.  I thought you already

14  conceded that as well.  So how can I ignore that, I guess, is

15  the -- the question.

16          MS. HARNDEN:  Well, because kidnapping is the lead

17  charge and kidnapping doesn't have -- and you go back to the

18  implied cause of action.  Kidnapping is the implied cause of

19  action at the very beginning.  And civilly -- or criminally,

20  it has no statute of limitations.  Why would it have a

21  statute of limitations civilly?

22          THE COURT:  Why would these -- the two judges that

23  you sued, not have -- well, let me ask you this.

24          Would you agree that the two judges that you have

25  sued were acting in their official capacities when they

*Harnden v. St. Clair County 31st District Court*

1    signed the orders with which you disagree, even if they were

2    wrong?

3           MS. HARNDEN:  Right.  Signing a pickup order, yes,

4    would be in their official capacity.

5           However, one would assume that a judge, especially

6    one sitting in practice, you know, being the chief jurist,

7    would make sure that the pickup order that he's putting his

8    name on is in correct order before he signs it.

9           And by not making sure that it was signed and in

10   correct order with all the descriptions on there, he's not --

11   he's acting outside his judicial capacity because he did not

12   make sure that procedure was done.

13          THE COURT:  Well, he's made a mistake at any rate.

14          MS. HARNDEN:  And it was out of --

15          THE COURT:  When does it cross the line from mistake

16   to acting outside --

17          MS. HARNDEN:  Well, you're -- the constitution is

18   very clear in the Fourth Amendment that it has to

19   specifically describe the persons and things that are to be

20   seized.

21          And if he's signing an order of which the specifics

22   are not on there, that -- I believe it was in *Bivens* as well,

23   that just when you're acting in that capacity as an officer

24   of the law, you're expected to know.

25          And they take oaths and they know what they're

*Harnden v. St. Clair County 31st District Court*

1    doing.  And you would think that he would know that it's his

2    job to make sure that if he's ordering the seizure of my

3    children, that that order would be in proper order.

4         THE COURT:  Now, in the report and recommendation

5    that I did in case number 16-13906, dated May 31st of this

6    year, on page two, I wrote:

7              "More specifically and pertinent to this

8              motion, she, --"

9    meaning you,

10             "-- alleges that March 15th, 2010, the date on

11             which the government's second case against them

12             was closed, concludes the nightmare that we had

13             lived for 17 months."

14   Would you agree that that is the date in which the nightmare

15   that we've been talking was concluded?

16        MS. HARNDEN:  Yes.

17        THE COURT:  And why don't you tell me a little bit

18   about the claim against the court reporter?  How long was the

19   transcript held up, Mrs. Harnden?

20        MS. HARNDEN:  It was either 17 or 19 months.

21        THE COURT:  And did the court have to do anything to

22   pry that out of the court reporter as I've seen some judges

23   do at times?

24        MS. HARNDEN:  That I'm aware of, I do not know.

25        THE COURT:  Do you know what the cause of the delay

*Harnden v. St. Clair County 31st District Court*

1  was?

2          MS. HARNDEN:  She would say that her computer

3  crashed.  She would say that she was sick, they lost the

4  audio, just various things like that.

5          But in the meantime, she was supplying me with the

6  other transcripts that I had ordered.

7          THE COURT:  Did you ultimately get this transcript,

8  though, you said 17 or 19 months?

9          MS. HARNDEN:  Yeah, it was either 17 or 19 months.

10  I can't remember.

11          THE COURT:  And was there any consequence to you

12  from not getting the transcript in a timely fashion, besides

13  frustration?

14          MS. HARNDEN:  At the time we were filing grievances

15  with the Michigan State Attorney General's office against

16  most of the people that are on -- between all three cases,

17  you know, whoever they had, and we couldn't file those until

18  we received that.

19          THE COURT:  Were you able to ultimately file them,

20  though?

21          MS. HARNDEN:  Yes.

22          THE COURT:  And none of those grievances were denied

23  on the basis of that you had waited too long?

24          MS. HARNDEN:  No.  They were denied because the

25  division chief, Mr. Cunningham, I believe his name is, he

*Harnden v. St. Clair County 31st District Court*

1  said that since the FBI is involved, I need to take it back

2  to the FBI.

3        THE COURT:  So they were essentially denied on the

4  merits, not because it had anything to do with the

5  transcript, per se?

6        MS. HARNDEN:  Yeah, just because he said the FBI was

7  involved.  He didn't even ask for anything from me.  He just

8  said, "Go back to the FBI."

9        THE COURT:  If you don't mind my asking, are you

10  employed outside the home?

11        MS. HARNDEN:  No.

12        THE COURT:  Have you ever thought about law school?

13        MS. HARNDEN:  I was told when I was a child to be a

14  lawyer.

15        THE COURT:  Okay.  Well, it's never too late.

16        And of all these defendants that you've named in

17  these current two lawsuits, is there anything that any of

18  them did to you, let's say, any bad act that any of them have

19  done to you or anything that you believe makes them incur

20  liability to you that occurred after November 15th of 2010?

21        MS. HARNDEN:  November 15th of 2010?  You mean,

22  March 15th of 2010?

23        THE COURT:  I'm sorry.  March 15th.

24        MS. HARNDEN:  No.  Not after that date, no.

25        Yes.  I take that back.  The probate judge -- when I

*Harnden v. St. Clair County 31st District Court*

1    filed the grievance at the Michigan Bar Association against

2    the guardian ad litem, I received a phone call from a

3    detective in the Port Huron City Police Department, and he

4    wanted me to come to Port Huron, because obviously I'm

5    outside of the jurisdiction, to discuss what I took to the

6    attorney grievance commission when I filed my complaint

7    against the guardian ad litem.

8           I asked him -- initially I agreed to go.  I was very

9    apprehensive about that.  It just didn't feel right.  So he

10   set up a meeting with me on July 3rd -- I don't remember the

11   exact date, but July, I don't remember the year.  But he

12   ended up not being there.

13          And during one of our previous phone calls, I asked

14   him, you know, who gave this case to you?  Why are you

15   calling me?  And the order came from the probate judge to

16   find out -- or the probate court to find out what I had and

17   what I took to the attorney grievance commission against the

18   guardian ad litem.

19          THE COURT:  But we don't know when that happened?

20          MS. HARNDEN:  What's that?

21          THE COURT:  This event that you're describing.

22          MS. HARNDEN:  I can't remember the year.  I want to

23   say it was 2012.  I'm not positive.  I mean, I could look it

24   up later and let you know.  But at this point, I do not

25   remember.

*Harnden v. St. Clair County 31st District Court*

1          THE COURT:  At any rate, that event is not anything

2     alleged in this lawsuit?

3          MS. HARNDEN:  No.

4          THE COURT:  Anything further that you would like to

5     tell me?

6          MS. HARNDEN:  I think I've covered it all.

7          THE COURT:  Okay.  Thank you very much.

8          MS. HARNDEN:  Thank you.

9          THE COURT:  Okay.  Mr. Shoudy, anything on rebuttal?

10          MR. SHOUDY:  No, thank you, Your Honor.

11          Just I will say I had the same suggestion to Ms.

12     Harnden, that it's never too late to start a second career

13     there.  So I had the same suggestion.  But --

14          THE COURT:  We see a lot of people who are without

15     attorneys here and most of them are, you know, not quite as

16     well spoken as Mrs. Harnden has been.  It's made for a

17     meaningful oral argument.

18          MR. SHOUDY:  Just if I could respond to a couple of

19     her arguments that she raised regarding the statute of

20     limitations.

21          She has termed or used the word, you know,

22     "kidnapping" as the basis of her claim.  I believe the Court

23     has addressed this in both of the prior cases and I agree

24     with the Court's conclusion, that it was the exact same

25     argument I raised in both motions that the kidnapping statute

*Harnden v. St. Clair County 31st District Court*

1   -- or the federal kidnapping statute does not create an

2   independent cause of action.  It is a criminal statute which

3   doesn't apply in this case.

4        And what we really have is an arrest by a police

5   officer, and then we have a child that was picked up pursuant

6   to an order from the court designed to try to protect the

7   child who the court had determined there was probable cause

8   to determine that there was potential harm.

9        So what we have really is, even though it's called

10  "kidnapping," it is -- at best, it's a constitutional claim,

11  which would be subject to a three-year statute of

12  limitations.

13       I believe in one of her reply briefs she did mention

14  interference with a familial relationship that, of course,

15  would be a separate constitutional claim, which would be a

16  three-year statute of limitations, and as the Court has

17  indicated, it could be a false arrest claim as to the son,

18  which would be the son's cause of action.  That would be

19  subject to a two-year statute of limitations.

20       It could be a claim of false imprisonment, which

21  would be a two-year statute of limitations.

22       THE COURT:  Interference with a familial

23  relationship, you said that's a statutory claim?

24       MR. SHOUDY:  That's actually a constitutional claim

25  based upon, I believe, the liberty interest set forth in the

*Harnden v. St. Clair County 31st District Court*

1   -- in the United States Constitution, I believe that's a

2   Fifth Amendment.

3           THE COURT:  Okay.  But it indicates it comes under

4   1983.

5           MR. SHOUDY:  Correct.  It would be subject to a

6   three-year statute of limitations as well.  So all of her

7   claims, all of her constitutional claims would be subject to

8   a three-year statute of limitations.  And her state law

9   claims of that nature would be subject to a two-year statute

10  of limitations.

11          And her only argument that she could raise is that

12  there is some argument that the statute was tolled for one

13  reason or another.  Tolling is something that is determined

14  by state law, and Michigan has a tolling statute.  And none

15  of the provisions in the tolling statute apply to the

16  pendency of a criminal investigation.

17          In the cases that Ms. Harnden is relying upon, I

18  believe she is actually confusing a couple of different

19  issues.  One is tolling of a statute.  The cases that she's

20  relying upon are cases that talk about a court's power to

21  stay a civil case where there is a criminal case pending.

22          But in those cases, you would already have a lawsuit

23  filed, and the court may stay the criminal case from

24  proceeding to allow the criminal case to complete.

25          So that is a totally different situation.  That

*Harnden v. St. Clair County 31st District Court*

1   issue was raised in the prior cases and that was rejected by

2   both the magistrate and by Judge Goldsmith for those reasons.

3   That is a different situation.  So I think she is confusing

4   two different concepts.

5            So basically it's very clear that the statute of

6   limitations has run.  The fact, that a lot of the

7   individuals, even the claims against some of the officers,

8   you know, those would have accrued in 2008.

9            But the last possible event that's relied upon is

10   2010 as to the court reporter, the transcript in 2011.  And

11   then the FOIA claim was based upon 2011 as well, but that's

12   something that has to be filed in state court, and has to be

13   filed within 180 days if you're challenging what you believe

14   to be a partial denial of a FOIA request.  So it's very clear

15   that they're barred by the statute of limitations.

16            And then I've raised several other arguments;

17   judicial immunity is very clear that that applies in this

18   case.  All of the actions by the court as alleged in the

19   complaint are all things that happened in the courtroom while

20   the judge is handling a proceeding which the court

21   legitimately believes it had proper jurisdiction to handle.

22   And none of the very, very narrow exceptions to judicial

23   immunity apply here.

24            Same thing with the prosecuting attorney.  We have

25   prosecutorial immunity for that.  All of the accusations

*Harnden v. St. Clair County 31st District Court*

1    against the prosecuting attorney are based upon, you know,

2    handling matters on behalf of the state involving a criminal

3    case and involving some child protection proceedings.  So I

4    think it's very clear.

5            THE COURT:  Well, thank you very much.  I will take

6    this case under advisement -- or both of these cases under

7    advisement.  And there will be a written report and

8    recommendation issued in each.

9            MR. SHOUDY:  Thank you, Your Honor.

10           THE COURT:  Thank you.

11           DEPUTY COURT CLERK:  Court is adjourned.

12           (Court in recess at 3:06 p.m.)

13                    *        *        *

14

15

16

17

18

19

20

21

22

23

24

25

*Harnden v. St. Clair County 31st District Court*

1

2

3

4

5

6

7

8

9

10

11

12

13

14                          **C E R T I F I C A T I O N**

15         I, Marie J. Metcalf, Official Court Reporter for

16 the United States District Court, Eastern District of

17 Michigan, Southern Division, appointed pursuant to the

18 provisions of Title 28, United States Code, Section 753, do

19 hereby certify that the foregoing is a correct transcript of

20 the proceedings in the above-entitled cause on the date

21 hereinbefore set forth.

22         I do further certify that the foregoing transcript

23 has been prepared by me or under my direction.

24 s\Marie J. Metcalf               March 24, 2018

25 Marie J. Metcalf, CVR, CM          (Date)